**No. 14-1414**

# In the
# United States Court of Appeals
# for the Fourth Circuit

**DANIELA SMEDLEY,**

**Appellee,**

**v.**

**MARK A. SMEDLEY,**

**Appellant.**

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**

# Brief for Appellant

**C. JASON HUMPHREY, ESQUIRE**
**GAYLOR, EDWARDS, VATCHER & HUMPHREY, LLP**
**219 New Bridge Street**
**Post Office Box 1057**
**Jacksonville, North Carolina  28541**
**Telephone:  (910) 455-9494**
**Facsimile:  (910) 455-0117**
**Email:  JasonHumphrey@gevhlaw.com**

**Attorney for Appellant**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE

      A.    Course Of Proceedings And Disposition Below . . . . . . . . . . . . . . . . 2

      B.    Statement Of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT

      THE DISTRICT COURT ERRED WHEN IT HELD THAT GERMANY
      IS THE HABITUAL RESIDENCE OF THE CHILDREN BECAUSE
      THAT HOLDING IS BASED ON THE DECISION OF THE GERMAN
      APPEALS COURT IN 2011 TO WHICH THE DISTRICT COURT
      ERRONEOUSLY EXTENDED COMITY . . . . . . . . . . . . . . . . . . . . . . . . . 8

      A.    Standard Of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      B.    Governing Treaty And Statutes . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      C.    The District Court Erred When It Extended Comity To The
           2011 Opinion Of The German Appellate Court . . . . . . . . . . . . . . . . 13

           1.    The German Court Failed to Make a
                Determination of Habitual Residence of the
                Children . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

i

## TABLE OF CONTENTS (CONT'D)

**Page**

     2.    The Evidence Before the German Court in 2011 Contradicted That Court's Finding That Father Had Consented to the Permanent Removal of the Minor Children . . . . . . . . . . . . . . . . . . . . . . . 17

     3.    There Was No Evidence Before the German Court That Father Acquiesced in Mother's Retention of the Minor Children in Germany . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

     4.    There Is Legal Precedent to Support a Finding of Error by the District Court in Extending Comity to the Decision of a Foreign Court . . . . . . . . . . . . . 23

   D.    This Court Should Reverse The District Court Grant Of Mother's Petition That Improperly Relied On Extension Of Comity To The German Court's 2011 Decision . . . . . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

REQUEST FOR ORAL ARGUMENT

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*Asvesta v. Petroutsas*, 580 F.3d 1000 (9th Cir. 2009) . . . . . . . . 9, 16, 19, 21 passim

*Baxter v. Baxter*, 423 F.3d 363 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Blondin v. Dubois*, 189 F.3d 240 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Cuellar v. Joyce*, 596 F.3d 505 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Darin v. Olivero-Huffman*, 746 F.3d 1 (1st Cir. 2014) . . . . . . . . . . . . . . . . . . 19, 22

*Diorinou v. Mezitis*, 237 F.3d 133 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Feder v. Evans-Feder*, 63 F.3d 217 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . 15

*Miller v. Miller*, 240 F.3d 392 (4th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . 9, 14, 24

*Robert v. Tesson*, 507 F.3d 981 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Walker v. Walker*, 701 F.3d 1110 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . 20

*Whallon v. Lynn*, 230 F.3d 450 (1st Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9


**Statutes**

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. §§ 11601–11611 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## TABLE OF AUTHORITIES

**Other**                                                    **Page**

Hague Convention on the Civil Aspects of International
    Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670,
    1343 U.N.T.S. 49 ["Hague Convention"] . . . . . . . . . . . . . . . 1, 2, 5, 9 passim

Hague Convention art. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Hague Convention art. 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10, 11

Hague Convention art. 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Hague Convention art. 13 . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13, 15 passim

Hague Convention art. 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## STATEMENT OF JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 over this appeal of a final order, entered in the U.S. District Court for the Eastern District of North Carolina, that finally resolved all matters before that court in a proceeding filed under the Hague Convention on the Civil Aspects of International Child Abduction. The district court's order was filed on April 28, 2014. Appellant Mark A. Smedley timely filed his Notice of Appeal on April 29, 2014.

## STATEMENT OF THE ISSUE

Did the district court err when it extended comity to the opinion of the German appellate court, issued in 2011, which had denied Appellant's 2011 Hague Convention petition and had determined at that time that the minor children should not be returned to the United States, with the consequence that the district court, in reviewing the present Hague Convention petition, made the erroneous finding that Germany is now the habitual residence of the children?

# STATEMENT OF THE CASE

**A.     Course Of Proceedings And Disposition Below**

This appeal is from an order entered April 28, 2014 in the U.S. District Court for the Eastern District of North Carolina, Southern Division, the Honorable James C. Fox, Senior U.S. District Judge, presiding.

The proceeding that resulted in the order on appeal began with the filing on April 7, 2014 of a verified petition under the 1980 Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention") by Petitioner-Appellee Daniela Smedley ("Mother") seeking return to her of the two minor children, AHS and GAS, that Mother alleged had been wrongly withheld from her by their father, Respondent-Appellant Mark A. Smedley ("Father").  (App. 7.)

The matter was heard on April 22, 2014 in Wilmington, North Carolina, at which time there was testimony from Mother and Father, and argument of counsel. Judge Fox also conducted a brief interview with the two minor children in chambers in the presence of only the court clerk and the court reporter.

On April 28, 2014, the court issued its order, granting Mother's petition under the Hague Convention and awarding physical custody of the two minor children to Mother for the purpose of returning the children to Germany, which the court determined to be their country of habitual residence.  (App. 40.)

Father filed a timely notice of appeal April 29, 2014. On April 30, 2014, Father filed in this Court an Emergency Motion to Stay Final Judgment Pending Appeal, which was denied by the district court on May 1, 2014.

**B.     Statement Of Facts**

Father, an American citizen, Mother, a citizen of Germany, met in Bamberg, Germany, where Father was stationed as a member of the United States Army. Father and Mother were married in Germany in May 2000. Their daughter, AHS, was born in Germany in June 2000. The three of them continued to live in Bamberg until Father was transferred to Fort Campbell, in 2002. (App. 41.) The parties purchased a house in Tennessee following that move, and Mother obtained a Tennessee driver's license. (Tr. 4/22/14 ["T."] 29.) Mother also obtained a U.S. permanent resident card. Father was deployed twice, to Afghanistan and Iraq, during the two years they were stationed at Fort Campbell, and Mother testified that she returned to Germany during the periods that Father was away. (App. 41.)

In 2004, Father was again assigned to Bamberg, and the family returned to Germany. In December 2005, the son of the parties, GAS, was born in Germany. The parties and their children lived in Germany until August 2010, when Father was transferred to Jacksonville, North Carolina, and the family moved to Swansboro, North Carolina. (App. 41.) The parties packed up all their possessions and shipped

3

them to North Carolina. (T. 43.) The parties bought a house in Swansboro, and AHS, who was 10 years old, was enrolled in school. GAS, who was not yet five years old, remained at home with Mother.

In July 2011, Mother told Father that she wanted to take the children to Germany. Mother contends that she told Father at that time that she intended to move permanently to Germany with the children. Father claims that she told him she wanted to visit during the summer holidays. Mother testified at the hearing in this matter that she returned to Bamberg, because "we all three did not like living in the U.S. and the marriage ended there." (T. 12.) Mother also testified that Father had agreed in 2011 that Mother could return to Bamberg with the children. (T. 12.)

Father purchased round-trip tickets for Mother and the two children, leaving July 13, 2011 and returning to the United States on August 10, 2011. As found by the district court, Father contended that he first learned on July 27 or 28, 2011 that Mother did not intend to return to the United States with the children. (App. 42.) Father testified that Mother had never told him anything about remaining permanently in Germany prior to her departure, although she had said she would like to live permanently in Germany after Father's military service was done. (T. 45.) Following Mother's decision to remain in Germany, Father filed a Hague Convention petition in Germany, contending that Mother had wrongfully removed the children from the

United States, that the United States was the children's habitual residence, and that the German court should return the children to North Carolina.  (App. 42.)

Father was unable to be present at the hearing in that matter, but he was represented by a German attorney.  At the end of the hearing, the German trial court declined to determine which country was the children's habitual residence  But the court decided that it was not required to return the children to Father because it was persuaded that sending the children back to the United States would expose them to a serious risk of physical or psychological harm, which, in the Hague Convention, is one of the stated exceptions to the obligation of a court to return children to their country of habitual residence once the court determines that they were wrongly removed to or retained in the forum country.  (App. 25.) The court's finding with regard to the risk of harm to the children was based on allegations that Father had beaten both the children, and that in the past AHS had been subject to physical abuse with a belt.  (App. 24.)

Father appealed that October 19, 2011 determination to a German appeals court, the Bamberg Higher Regional Court.  The higher court issued its opinion on December 5, 2011 in which it summarized the evidence presented in the trial court and denied Father's appeal.  (App. 22.)  The appeals court stated that the question of whether the United States was the country of residence of the children "can remain open," and it made no determination of habitual residence.  (App. 26.)  The appeals

5

court then ignored the trial court's rationale for the decision, presumably finding insufficient evidence of physical abuse and, instead, based its decision on its conclusion that Father had consented to the children's permanently remaining in Germany.  (App. 26.)  The court concluded that because of Father's consent, a wrongful retention in the context of Article 3 of the Hague Convention was not applicable to the case. (App. 29.)

During this period, Father had obtained orders from the Onslow County District Court in North Carolina declaring that North Carolina was the "habitual residence" of the children and granting temporary custody of the children to Father.  (App. 42.) Mother obtained a divorce in Germany in 2012.  (T. 62.)  She was asked at that time whether she wanted to seek sole custody, but she did not; the court awarded joint custody of the children to both parents, and directed that the children should live with Mother in Bamberg.  (T. 14.)

The children lived in German with Mother from August 2011 to August 6, 2013.  At that time, and at mother's instigation, the parties agreed that the children should spend a vacation of three or four weeks in North Carolina with Father.  (T. 63.) At Mother's insistence, Father signed a paper saying he would return the children on or about August 26, 2013 unless the mother was notified.  (T. 63.)  Father testified that he had the intent at the time he signed the document to return the children as agreed.

(T. 64.)  Father did not, in fact, return the children to Germany on August 26, 2013 but, instead, kept them in North Carolina, where he enrolled them in school.

On April 8, 2014, Mother filed, in the United States District Court for the Eastern District of North Carolina, the Hague Convention petition that is the basis of this appeal.  (App. 7.)  Following a hearing held April 22, 2014, at which both parents appeared and testified, the district court issued the opinion, now before this Court on appeal, granting Mother's petition and directing that she be permitted to return with the children to Germany.  (App. 40.)  Father filed a timely notice of appeal, and now files this Appellant's brief.

## SUMMARY OF THE ARGUMENT

Father will argue that the district court erred when it extended comity to the decision of the German court in 2011 that denied the Hague Convention petition filed by Father and ordered that the children were to remain in Germany.  The 2011 decision of the German court was based on the erroneous conclusion that Father had consented to Mother's retention of the minor children in Germany following Mother's travel to Germany with the children for what Father believed was a one-month vacation in the summer of 2011.

Father contends that because the German order issued in 2011 was contrary to the law and to the evidence, it was error for the district court in the present proceeding

7

to extend comity to that order and to its finding that the children should remain in Germany at that time.

Based on deference to the 2011 order of the German court that the children were to remain in Germany, the district court here erroneously found that Germany was the habitual residence of the children, and the district court therefore allowed Mother's Hague Convention petition and ordered that the children be returned to Germany.

A correct analysis of the 2011 German order would have compelled a determination that the children were wrongly retained in Germany in 2011, and would have required an independent analysis of the habitual residence of the children taking that into account.

**ARGUMENT**

**THE DISTRICT COURT ERRED WHEN IT HELD THAT GERMANY IS THE HABITUAL RESIDENCE OF THE CHILDREN BECAUSE THAT HOLDING IS BASED ON THE DECISION OF THE GERMAN APPEALS COURT IN 2011 TO WHICH THE DISTRICT COURT ERRONEOUSLY EXTENDED COMITY.**

**A.    Standard Of Review.**

In an action pursuant to ICARA and the Hague Convention, we review the district court's findings of fact for clear error, while its conclusions regarding principles of domestic, foreign, and international law are reviewed by us de novo. *See Friedrich II*, 78 F.3d at 1064 (6th

Dist.) (citing Fed.R.Civ.P. 44.1) (other citations omitted); *accord Shalit,* 182 F.3d at 1127.

*Miller v. Miller*, 240 F.3d 392, 399 (4th Cir. 2001).

"We review the district court's factual findings for clear error and its interpretation of the Convention de novo. *See Walsh v. Walsh*, 221 F.3d 204, 218 (1st Cir.2000); *Friedrich v. Friedrich,* 78 F.3d 1060, 1064 (6th Cir.1996)." *Whallon v. Lynn*, 230 F.3d 450, 454 (1st Cir. 2000).

In *Asvesta v. Petroutsas*, 580 F.3d 1000 (9th Cir. 2009), the court discussed the standard of review applicable to its review of the district court's extension of comity to a foreign court's decision under the Hague Convention. The court in *Asvesta* concluded, in that case, that under either de novo review or review for abuse of discretion, it was error for the district court to have extended comity to the Greek court's Hague decision. *Id.* at 1010.

The *Asvesta* court noted that the Second Circuit in *Diorinou v. Mezitis*, 237 F.3d 133 (2d Cir. 2001), had held that it would apply de novo review to the district court's application of comity in that case because the district court had applied the doctrine in "consider[ing] whether to accept the adjudication of a foreign tribunal on a cause of action or a particular issue." *Asvesta*, 580 F.3d at 1010 (quoting *Diorinou*, 237 F.3d at 139).

In the present case, under either the reasoning in *Diorinou* or the rule governing review of the application of principles of law and the Hague Convention, this Court should review the decision of the district court de novo.

**B.    Governing Treaty And Statutes.**

This proceeding is governed by the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 49 [hereinafter "Hague Convention"], which was adopted in 1980, and has as its stated goal "to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and . . . to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." *Id.* art. 1.  The treaty was ratified in the United States in 1986 and was implemented in 1988 through the enactment of the International Child Abduction Remedies Act ("ICARA"), which is codified at 42 U.S.C. §§ 11601-11611.

The district court in the present case held that Father's retention of the children in North Carolina was wrongful under the Hague Convention.  Under Article 3, the removal or retention of a child is considered wrongful when it is in breach of custody rights under the law of the state in which the child was "habitually resident" immediately before the child was removed or retained by one of the parents. Therefore, the determination of the habitual residence of the child is ordinarily a

10

critical element of a court's decision in order to determine what custody law is applicable. Article 3 of the Hague Convention states:

> The removal or the retention of a child is to be considered wrongful where—
>
> [a] it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was *habitually resident* immediately before the removal or retention; and
>
> [b] at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.
>
> The rights of custody mentioned in sub-paragraph a) above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

Hague Convention, *supra*, art. 3 (emphasis added).

Under Article 12 of the Hague Convention, upon a finding that the child has been wrongfully removed or retained under Article 3, the court "shall order the return of the child forthwith" if the proceedings were commenced within a year of the wrongful removal or retention. *Id*. art. 12. If more than a year elapsed, the court has the option to decline to return the child upon a showing that the child is now settled in its new environment.

The other provision of particular relevance in the present case is Article 13, which provides a limited number of exceptions to the obligation to return a child that has been wrongfully removed or retained. The article states that the court is not bound

11

to order the return of the child if the person opposing the return establishes that (1) the person seeking return was not actually exercising custody rights at the time of removal or retention; (2) the person seeking return *had consented to or subsequently acquiesced in the removal or retention*; (3) there is grave risk that return would expose the child to physical or psychological harm; or (4) the child objects to the return, and has reached an age and maturity at which the child's wishes should be considered. The issue in the present case is whether Father consented to the removal and retention by Mother of the minor children in 2011, as claimed by Mother and found by the German court, or whether the children should have been returned to North Carolina at that time.

Article 13 provides:

> Notwithstanding the provisions of the preceding Article, the judicial or administrative authority of the requested State is not bound to order the return of the child if the person, institution or other body which opposes its return establishes that—
>
> > [a]    the person, institution or other body having the care of the person of the child was not actually exercising the custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention; or
> >
> > [b]    there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.
>
> The judicial or administrative authority may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views.

12

In considering the circumstances referred to in this Article, the judicial and administrative authorities shall take into account the information relating to the social background of the child provided by the Central Authority or other competent authority of the child's habitual residence.

*Id.* art. 13.

## C. The District Court Erred When It Extended Comity To The 2011 Opinion Of The German Appellate Court.

As has been discussed, following Mother's travel to Germany with the children in July 2011 and her decision to remain in Germany at the end of that summer, Father filed a Hague Convention petition in Germany seeking return of the children to North Carolina. Father's petition was denied by the German court, and the children remained in Germany with Mother until they traveled to North Carolina with Father in August 2013. When Father refused to return the children at the end of August 2013 and settled them in North Carolina instead, Mother filed her own Hague Convention petition in April 2014 seeking return of the children to Germany. The district court order granting Mother's petition is now before this Court.

In its order, the district court acknowledged that "[t]he sole dispute between the parties is whether Germany or the United States is the children's habitual residence." (App. 48.) The court recognized that the children had been living in Germany for two years prior to Father's retention of them in the United States, but then it noted that if the original retention in Germany was wrongful, that country might not be their

habitual residence. (App. 51.) The court cited the statement in *Miller*, 240 F.3d 392, that "a parent cannot create a new habitual residence by wrongfully removing and sequestering a child." *Id.* at 400. (App. 51.)

The issue now before this Court is whether the district court erred when it recognized and deferred to the decision of the German court, which had held that even if the children were wrongfully removed or retained by Mother, Father had consented to the removal.

### 1.     The German Court Failed to Make a Determination of Habitual Residence of the Children.

The German court hearing the Hague Convention petition was required to follow the procedures set forth in the treaty, which included, first and foremost, making a determination of the habitual residence of the children. That determination is a prerequisite to a determination of wrongful removal or retention, and is the finding that then dictates what custody law should be applied.

> When faced with a petition for return of a child under the Hague Convention, the courts of signatory nations may only determine the merits of the abduction claim; the merits of the underlying custody claim are not to be considered. Hague Convention, Article 19; *Friedrich v. Friedrich,* 983 F.2d 1396, 1400 (6th Cir.1993).

*Robert v. Tesson*, 507 F.3d 981, 988 (6th Cir. 2007). "By operation of the Convention, 'a United States District Court has the authority to determine the merits of an abduction claim, but not the merits of the underlying custody claim.' *Friedrich*

*v. Friedrich,* 983 F.2d 1396, 1400 (6th Cir.1993)." *Blondin v. Dubois*, 189 F.3d 240, 245 (2d Cir. 1999) (footnote omitted). Article 19 of the Hague Convention itself states: "A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue." Hague Convention, *supra*, art. 19.

The German court hearing the 2011 petition moved right to the affirmative defenses set forth in Article 13, and concluded that it could leave the issue of habitual residence open. The failure of the German court to address the issue of habitual residence was directly addressed by the district court in its opinion, which compared the German court's actions to a summary judgment motion that raises an affirmative defense after assuming there is sufficient evidence to establish liability. (App. 56.) However, a summary judgment motion does not carry with it the cultural weight of an international custody determination, and it does not determine which court is available to the parties and which law should be applied.

If the German court had made a determination of the children's habitual residence at that time, it would have been compelled to find that their habitual residence was North Carolina, the place the family had moved to and had lived in for almost a year. The fact that Mother was not happy in North Carolina and that she thought of returning to Germany would not have altered that determination. *See, e.g.*, *Feder v. Evans-Feder*, 63 F.3d 217, 224 (3d Cir. 1995) ("That Mrs. Feder did not

intend to remain in Australia permanently and believed that she would leave if her marriage did not improve does not void the couple's settled purpose to live as a family in the place where Mr. Feder had found work.").

By failing to make a determination of the habitual residence of the children, the German court avoided the need to decide which law would be applied to any custody determination. The German court also avoided the less quantifiable consideration that, under the Hague Convention, custody clearly should have been determined in North Carolina rather than Germany. That recognition might have made a court respectful of the Hague Convention more reluctant to find that the defenses of Article 13 applied in the case.

The Ninth Circuit Court of Appeals offered the following comment about a similar failure by a court in Greece: "[T]he Greek court completely failed to determine the child's habitual residence in its Hague Convention analysis, even though the resolution of this issue is central to a court's Article 3 inquiry and is perhaps the most important inquiry under the Convention." *Asvesta*, 580 F.3d at 1017.

> **2.     The Evidence Before the German Court in 2011 Contradicted That Court's Finding That Father Had Consented to the Permanent Removal of The Minor Children.**

The summary of the proceedings of the German appeals court from the November 29, 2011 hearing includes extensive citation to Mother's testimony, which forms the basis of the court's decision that Father consented to the removal of the children from North Carolina and their permanent retention in Germany.

The first striking feature of the report of the German case is that five or six pages of the report are devoted to Mother's testimony, while one paragraph summarizes the evidence offered by counsel for Father. Also striking, however, is the fact that Mother's testimony does not support the conclusion reached by the German court.

Mother testified that in May 2011, Mother had a conversation with Father in which she told him that she wanted to separate from him and that she wanted to go back to Germany during the school holidays, which would start in late June 2011.

> "[Father] ultimately agreed that I would go to Germany with the children. [Father] was concerned that I had not made a final decision when we left from USA to Germany. I told [Father] that I would give the whole matter a final thought and that I would let him know about my final decision regarding our separation within four weeks of my stay in Germany. In the event that I decided to remain in Germany, [Father] told me that he would quickly try to be relocated in Germany, so he could be as close as possible to his children.

(App. 32.)

17

Mother testified that Father had purchased round-trip tickets for Mother and for the children.  (App. 33.) This was a clear, objective indication that Father did not expect Mother and the children to remain in Germany.  Mother then testified:

> Initially I pointed out that I had not changed my decision, but I also asked him to give me some time.  I had agreed on a reflection period of four weeks with [Father].  By the end of July 2011 I had finally taken my decision—we would remain in Germany.  I informed [Father] during a phone conversation.  *He was the first who learned of my decision*.  The reaction of [Father] was a kind of roller coaster.  His reactions ranged between anger and grief.  He pointed out that he would give me two more weeks to take my decision.  I told him that I could not give him any hopes, since I was not going to change my decision.

(App. 33 (emphasis added).)

Mother's own testimony establishes that she had not made a decision about whether she would return to North Carolina with the children until the end of July 2011, several weeks after she and the children had traveled to Germany.  Mother's own testimony contradicts the findings of the German court.

It is clear that allowing children to visit another country does not constitute consent to permanent removal of the children to that other country.  The fact that Father permitted Mother to travel with the children to Germany for several weeks during the summer school holiday did not indicate that Father had consented to Mother's relocating permanently to Germany with the children.

In *Asvesta*, 580 F.3d 1000, a case which is virtually indistinguishable from the present case, the court of appeals rejected the district court's extension of comity to a Greek finding of consent that was based on two pieces of evidence:

> (1) a statement in the November 2, 2005, e-mail from Petroutsas to Asvesta, "Go to Greece with the child and we will see how I will come to Greece to visit him," and (2) a later writing, notarized on November 11, 2005, in which Petroutsas gave permission to Asvesta to travel with the child from November 8, 2005, to December 8, 2005.

*Id.* at 1019.  The Ninth Circuit emphasized that

> Petroutsas' later written consent for Asvesta to *travel* with the child directly contradicts the Greek court's finding [] that Petroutsas consented to the child's indefinite stay in Greece. In that writing, Petroutsas specified the time during which he consented to Asvesta traveling with their son: between November 8, 2005, and December 8, 2005.

*Id.* (emphasis in original).  Citing *Asvesta*, the court in *Cuellar v. Joyce*, 596 F.3d 505 (9th Cir. 2010), noted that "the Convention requires the parent opposing removal to 'unequivocally demonstrate that [the petitioning parent] consented to the child's indefinite stay in [the country].'  *Asvesta*, 580 F.3d at 1019."  *Id.* at 512.

In *Darin v. Olivero-Huffman*, 746 F.3d 1 (1st Cir. 2014), the court held that the wrongful retention of the child occurred when the mother, who had traveled to Puerto Rico from Argentina with the father and the child, informed the father that she would not be returning with him to Argentina and that she and the child would instead be remaining in Puerto Rico.  *Id.* at 10.

In *Walker v. Walker*, 701 F.3d 1110, 1123 (7th Cir. 2012), the court of appeals reversed the district court's finding that the father had consented to the mother's permanent relocation with the children, which was based on a letter written by the father that conditioned his consent on concessions that the mother refused to agree to.

Here, Father's consent to Mother's trip to Germany was conditioned on her agreement to return to North Carolina with the children at the end of the summer. Father's legal representative at the German proceedings told that court that Father had indicated that divorce was never discussed in the United States before Mother left on the trip but that Mother wanted to spend four weeks of the summer vacation in Germany with the children and then return to the United States. (App. 34.) Father had purchased round-trip tickets for Mother and the children, and Mother admitted that Father got very upset when she told him she had decided not to return. At that point, Father immediately sought custody from a North Carolina court, and he initiated his Hague Convention proceedings in Germany. These are not the actions of a father who has consented to the retention of his children by their mother in another country.

The evidence relied on by the German court appears to be the court's belief that Mother had been unhappy in North Carolina and that she had discussed divorce with Father before she and the children left for Germany in July 2011. Even if there had been discussion of divorce, that would not automatically suggest that Mother would

get custody of the children or would have the right to remove or retain the children without Father's consent.

The district court erred when it extended comity to the finding of the German court that "[Father] consented to the children's travel to Germany with the knowledge that they may not return, and therefore their retention in Germany was not wrongful." (App. 59.)   The court in *Asvesta* concluded that "[a]lthough we are reluctant to disregard the factual findings of a foreign court, the lack of evidentiary support for the Greek court's finding of consent renders its Article 13(a) determination unreasonable." 580 F.3d at 1020.  On the record that was before the district court in this case, this Court is compelled to reach a similar conclusion.


### 3. There Was No Evidence Before the German Court That Father Acquiesced in Mother's Retention of the Minor Children in Germany.

In her testimony at the hearing held November 29, 2011 before the German appeals court, Mother testified that "[b]y the end of August 2011 [Father] told me he wants to have one of the children back in the USA, namely GAS. . . . [Father] said that he knows that his daughter does not want to go back with him in the USA."  (App. 34.) Mother acknowledges that Father promptly sought return of his son to North Carolina once he learned of Mother's intentions and that he did not acquiesce in her decision to keep the children in Germany.

21

A recent decision from the First Circuit Court of Appeals has outlined the analysis of acquiescence as follows:

> Acquiescence tends to require more formality than consent—e.g., testimony in a judicial proceeding, a convincing written renunciation of rights, or a consistent attitude over a significant period of time. While some cases present a situation where there is a clear-cut, formal acquiescence—such as a consent order by a non-U.S. parent agreeing to let a state court decide final custody—many times, cases present circumstances that are a little hazier. When attempting to characterize ambiguous conduct as a basis for inferred acquiescence, courts employ a pure subjective intent inquiry. Of course, the subjective intent refers to the subjective intent of the parent who is claimed to have acquiesced.

*Darin*, 746 F.3d at 16 (citations omitted); *accord Baxter v. Baxter*, 423 F.3d 363, 371 (3d Cir. 2005).

The subjective intent of Father, as stated by him in this case, has never been in question. Father neither consented nor acquiesced in Mother's permanent retention of the children in Germany. His objective conduct is completely consistent with his stated position. When Mother told him of her intent to remain in Germany, he immediately told her that he wanted custody, at least of GAS, and he promptly filed custody proceedings in both North Carolina and German courts. There is no basis for finding that Father acquiesced in Mother's decision to remain in Germany with the children, and this Court should so find.

**4.      There Is Legal Precedent to Support a Finding of Error by the District Court in Extending Comity to the Decision of a Foreign Court.**

As has been noted above, the facts of the case decided by the Ninth Circuit Court of Appeals in *Asvesta* are almost indistinguishable from the present case.  In that case, as here, the mother had returned with the child to her native country, in that case Greece, for a brief visit, and at the end of the visit she decided not to return to the United States.  The father filed a Hague Convention petition, which was denied by the Greek court on a finding, among other things, that the father had consented to the mother's retention of the child in Greece.  The father then took the child to the United States for court-ordered visitation and he, in turn, refused to return the child.  The mother filed her own Hague Convention petition in the United States.  As here, the district court extended comity to the foreign court's denial of the initial Hague Convention petition filed by the father and held that the child should remain in Greece.  The court of appeals in that case stated the issue, and its resolution, as follows:  "On appeal, we must determine whether the district court properly extended comity to the Greek court's Hague order.  We conclude that it did not, reverse the district court's order, and remand for further proceedings." *Asvesta*, 580 F.3d at 1003.

Although cases brought under the Hague Convention are strongly driven by their facts, the underlying facts in these two cases have great similarity; if anything, the facts of the case now before this Court demonstrate even greater disregard for the purposes underlying the Hague Convention.  As this Court stated in *Miller*, "the primary purpose of the Hague Convention is 'to preserve the status quo and to deter

parents from crossing international boundaries in search of a more sympathetic court.' *Friedrich v. Friedrich,* 983 F.2d 1396, 1400 (6th Cir.1993)." 240 F.3d at 398. That purpose would be furthered by reversal in the present case.


**D.**    **This Court Should Reverse The District Court Grant Of Mother's Petition That Improperly Relied On Extension Of Comity To The German Court's 2011 Decision.**

The decision of the district court, which was founded on that court's deference to the German court's determination that Mother's removal of the children to Germany in 2011 was done with Father's consent, should be reversed. The case should be remanded to the district court for a hearing to determine the habitual residence of the children as of the time of Mother's Hague Convention petition, viewed with the understanding that Mother's retention of the children in 2011, and their subsequent time in Germany, were undoubtedly wrongful under the Hague Convention.

## CONCLUSION

For the reasons stated, the decision of the district court that granted Mother's petition under the Hague Convention should be reversed. This Court should direct the district court to hold a hearing to determine the habitual residence of the children so that a custody determination can be entered in the proper court.

Gaylor, Edwards, Vatcher & Humphrey, LLP

By: <u>s/ C. Jason Humphrey</u>
C. Jason Humphrey, Esquire
219 New Bridge Street
Post Office Box 1057
Jacksonville, North Carolina  28541
Telephone:  (910) 455-9494
Facsimile:  (910) 455-0117
Email: JasonHumphrey@gevhlaw.com

Attorney for Respondent-Appellant

## REQUEST FOR ORAL ARGUMENT

In order to more fully apprise the Court of the compelling issues presented by this case, the Appellant requests oral argument before the Court.

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

### Certificate of Compliance With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,951 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using WordPerfect X5 in Times New Roman, font size 14.

s/ C. Jason Humphrey
C. Jason Humphrey, Esquire
Gaylor, Edwards, Vatcher & Humphrey, LLP
219 New Bridge Street
Post Office Box 1057
Jacksonville, NC  28541
Telephone:  (910) 455-9494
Facsimile:  (910) 455-0117
Email: JasonHumphrey@gevhlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of June 2014, I filed the Opening Brief of Appellant and Appendix with the Clerk of the Court via hand delivery and electronically using the Court's CM/ECF system, which will send notification of such filings to

Chad Dwight Hansen, Esquire
Kilpatrick Townsend & Stockton, LLP,
1001 West 4th Street
Winston-Salem, North Carolina  27101-2400
chadhansen@kilpatricktownsend.com

s/ C. Jason Humphrey
C. Jason Humphrey, Esquire